

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

March 22, 1960

Mr. Franklin L. Smith
County Attorney
Corpus Christi, Texas

Opinion No. WW-813

Re: May a county as an adjunct
to the operation of a ver-
tical lift bridge over a
navigable deep water chan-
nel, purchase public li-
ability insurance to cover
damages or injuries result-
ing from its tortious acts
committed in the operation
thereof, such bridge being

Dear Mr. Smith:

a part of a county road.

Your question for an opinion of the Attorney General
has been received in this office as to whether a county,
as an adjunct to the operation of a vertical lift bridge
over a navigable deep water channel, may purchase liabil-
ity insurance to cover damages or injuries resulting from
its tortious acts committed in the operation of such bridge,
said bridge being a part of a county road.

The pertinent facts stated in your letter concerning
this question are as follows:

"In connection with a port improve-
ment and railroad re-location project cur-
rently under way in Nueces County, there
has been constructed a vertical lift bridge,
known as the Upper Harbor Bridge, over a
portion of the Port of Corpus Christi. Such
bridge was built jointly by Nueces County,
the City of Corpus Christi, Nueces County
Navigation District, and the U.S. Corps of
Engineers. The purpose of the bridge is to
provide a means of crossing Corpus Christi's
deep water port by both vehicular and rail-
road traffic. Such roadway is a county road.
In order to permit ocean-going vessels to
pass under such bridge, it is raised to a
height of 129 feet; it is then lowered again
and passage of vehicular and railroad traffic
resumes."

" . . .

"A question has arisen concerning
the legality of the purchase of such li-
ability insurance by Nueces County, be-
cause, of course, the county ordinarily
is immune from liability for damages re-
sulting from its tortious acts. However,
in view of the fact that the operation of
this bridge would subject Nueces County
to the jurisdiction of the admiralty court,
it appears to me that the principle of
governmental immunity does not apply."

Regardless of the fact that Texas Courts have con-
sistently held that the State, a county, or any political
subdivision of the State, other than cities, are not li-
able for the tortious acts of its officers, agencies and
employees committed in the exercise of governmental func-
tions, and that there is a total and absolute absence of
liability on the part of the State or any of its subdivi-
sions for an action in tort, unless specifically provided
by statute, /Miller v. El Paso County, 156 S.W. 2d 1000;
Orndorff v. State, ex rel McNeal, 108 S.W. 2d 206 (Civ.
App. 1937, error ref.)_/ it is the opinion of this Depart-
ment that a county may be liable for its torts in a Court
of Admiralty where an Admiralty Court has jurisdiction.

"Admiralty" as defined in 2 Corpus Juris Secundum 64,
Admiralty Law, Section I, Subsection 1, is that branch or
department of jurisprudence which relates to and regulates
maritime property, affairs and transactions, whether civil
or criminal. In a more limited sense, it is the tribunal
exercising jurisdiction over maritime causes and administer-
ing the maritime law by a procedure peculiar to itself and
distinct from that followed by courts either of equity or of
common law. Another definition may be found in Lee v. Licking
Valley Coal Digger Co., 273 S.W. 542, 543 (Ky. 1925), from
which we quote:

"Admiralty is a tribunal exercising
jurisdiction over all maritime contracts,
torts, injuries or offenses, and extends
to navigable rivers, whether tidal or not,
in the United States. . . . ."

In 2 Corpus Juris Secundum 74, Admiralty Law, Section
III, Subsection B (11), it states as follows:

". . . A body of water constitutes nav-
igable water of the United States within ad-
miralty jurisdiction when it forms, by itself,
or by its connection with other waters, a con-
tinued highway over which commerce is, or may
be, carried on with other states or countries;
and, where meeting such test, the following have
been held within admiralty jurisdiction:  Canals
Great Lakes, rivers, and slips.  . . ."

It is further stated in Section III, Subsection E
(7), page 114 of Corpus Juris Secundum, as follows:

"A court of admiralty, generally, has
jurisdiction of a suit to recover damages for
a maritime tort or injury, but injuries that
are not maritime are outside of its jurisdiction.
The general rule is that the place of injury,
namely, whether or not on the high seas or other
navigable waters, determines whether or not the
injury is maritime;  and it has been frequently
stated that it solely determines the question. The
general rule that the place of injury determines
its character applies irrespective of the nature
and origin of the wrong or injury, . . ." (Emphasis
added).

There has been no opinion of an Attorney General of Texas
on the question of liability of a county for its torts in a
Court of Admiralty where an Admiralty Court has jurisdiction,
nor have there been any Texas cases that we have been able to
find passing on that specific question.

In Workman v. New York, 179 U.S. 552, 21 S. Ct. 212,
45 L. Ed. 314, it is stated as follows:

"The proposition then which we must first
consider may be thus stated:  Although by the
maritime law the duty rests upon courts of ad-
miralty to afford redress for every injury to
person or property where the subject-matter is
within the cognizance of such courts and when
the wrongdoer is amenable to process, neverthe-
less the admiralty courts must deny all relief
whenever redress for a wrong would not be afford-
ed by the local law of a particular state or the

course of decisions therein. And this, not because, by the rule prevailing in the state, the wrongdoer is not generally responsible and usually subject to process of courts of justice, but because in the commission of a particular act causing direct injury to a person or property it is considered, by the local decisions, that the wrongdoer is endowed with all the attributes of sovereignty, and therefore as to injuries by it done to others in the assumed sovereign character, courts are unable to administer justice by affording redress for the wrong inflicted. The practical destruction of a uniform maritime law which must arise from this premise, is made manifest when it is considered that if it be true that the principles of the general maritime law giving relief for every character of maritime tort where the wrongdoer is subject to the jurisdiction of admiralty courts, can be overthrown by conflicting decisions of state courts, it would follow that there would be no general maritime law for the redress of wrongs, as such law would be necessarily one thing in one state and one in another; one thing in one port of the United States and a different thing in some other port. As the power to change state laws or state decisions rests with the state authorities by which such laws are enacted or decisions rendered, it would come to pass that the maritime law affording relief for wrongs done, instead of being general and ever abiding, would be purely local — would be one thing to-day and another thing to-morrow. That the confusion to result would amount to the abrogation of a uniform maritime law is at once patent. * * * The disappearance of all symmetry in the maritime law and the law on the other subjects referred to, which would thus arise, would, however, not be the only evil springing from the application of the principle relied on, since the maritime law which would survive would have imbedded in it a denial of justice. This must be the inevitable consequence of admitting the proposition which assumes that the maritime law disregards the rights of individuals to be protected in their persons and property from wrongful injury, by recognizing that those who are amenable to the jurisdiction of courts of admiralty are nevertheless endowed with a supposed governmental attribute by which

they can inflict injury upon the person or
property of another, and yet escape all respon-
sibility therefor. * * * . . . As a result of
the general principle by which a municipal
corporation has the capacity to sue and be sued,
it follows that there is no limitation taking
such corporations out of the reach of the proc-
ess of a court of admiralty, as such courts,
within the limit of their jurisdiction, may reach
persons having a general capacity to stand in
judgment. * * * The contention, is, although the
corporation had general capacity to stand in
judgment, and was therefore subject to the proc-
ess of a court of admiralty, nevertheless the
admiralty court would afford no redress against
the city for the tort complained of, because
under the local law the corporation as to some
of its administrative acts was entitled to be
considered as having a dual capacity, one pri-
vate, the other public or governmental, and as
to all maritime wrongs committed in the per-
formance of the latter functions it should be
treated by the maritime law as a sovereign. But
the maritime law affords no justification for
this contention, and no example is found in such
law, where one who is subject to suit and amenable
to process is allowed to escape liability for the
commission of a maritime tort, upon the theory
relied upon."

It is obvious from the opinion in the Workman v. New
York case that a county or a city whether acting in a
governmental or proprietary capacity is liable for its
torts under Admiralty Law but that it is essential for re-
covery that the county or political subdivision be "subject
to suit and amenable to process," and that it have "the
capacity to sue and be sued," and that it have "a general
capacity to stand in Judgment."

In the case of O'Keefe v. Staples Coal Co., 201 Fed.
131, it was held that a county in the operation of a draw-
bridge, under the local statutes, was a body amenable to
the process of the Federal court, had a general capacity to
stand in judgment, and was liable for a maritime tort in
an action brought in the Federal court, even though it was
exempt from liability by a local statute for negligence of
its agents or servants engaged in the actual performance of
a public duty imposed by statute. In the case of The Alex Y.

Hanna, 246 Federal 157, in which the court, holding that a Delaware county with no corporate organization or status could not be sued in admiralty for the maritime tort of its agents, said:

> "A municipal corporation or other organized political district of a state having a general capacity to sue and be sued may be held liable in a court of admiralty in an action in personam for damages resulting from negligence or other tort on the part of its officers or agents while acting in their representative character, where the principles of maritime law as recognized by the Constitution and laws of the United States, justify the granting of such relief. The circumstances that, at the time of the commission of the tort, such corporation or district was engaged in the discharge of a governmental or sovereign rather than a subordinate or local function is immaterial. And where such corporation or organized district possesses such general capacity to sue and be sued, it is not competent for the state to provide that such corporation or district shall enjoy immunity from accountability in a proceeding in personam in a court of admiralty for the recovery of damages for a maritime tort committed by it through its officers or agents. In such case it is beyond the power of the state to defeat or render nugatory rights and liabilities created and recognized by the paramount authority of the Constitution and laws of the United States. . . ."

In the very recent case, Nueces County, Texas Road District No. 4.v. The Nellie B.A.B. No. 184, the United States District Court, S.D. Texas, Corpus Christi Division, it is stated as follows:

> "The short answer to this contention, at least so far as the claims for tort not resulting in death are concerned, is the deeply rooted principle that a state cannot deprive a party of redress in Admiralty against a municipality for the negligence of its servants. . . . There is a distinction between immunity from process, which goes to the question of jurisdiction, and immunity from liability, which deals with the substantive law of admiralty. Where the Court has jurisdiction, as here, /because the county may sue and be sued, 11-B, Tex. Jur. 120-123, secs. 87 and 88/ the state may not

> deprive an admiralty court of the right to re-
> dress a wrong;. . . or deprive a person of any
> substantial admiralty rights. . . ."

Under Texas law a county may sue and be sued, 11-B,
Tex Jur. 120-123, secs. 87 and 88, and has a "general
capacity to stand in Judgment."

The law as enunciated under Article III, Section
52 of the Constitution of Texas, that a county is denied
the right to lend its credit or grant public money in aid
of, or to any individual or corporation and that there-
fore a county has no authority to purchase liability in-
surance is based on the premise that a county as a sub-
division of the State cannot be held liable for its tor-
tious acts under any circumstances and that therefore there
could be no necessity or reason to purchase liability in-
surance.  However, when it is determined, as under Admiralty
Law, that a county can stand in judgment and be held liable
in tort, a different rule will result as to the legality of
the purchase of liability insurance by a county.

When a claim for injuries or damages for the tortious
acts of a county's officers, agents and employees has been
reduced to a valid judgment, it cannot be said that such
judgment is not legally chargeable against a county.  The
following is quoted from Article 1575, Vernon's Civil
Statutes:

> ". . . When a judgment is rendered against
> a county the commissioners court of such county
> shall settle and pay such judgment in like manner
> and pro rata as other similar claims are settled
> and paid by said court. . . ."

In view of our opinion that a county may be liable under
Admiralty Law for injuries and damages sustained by reason of
the negligent or tortious acts of its agents or employees when
the Admiralty Courts have jurisdiction, it is our further
opinion that the Commissioners Court has the implied power to
employ reasonable methods to protect the county against such
liability, it being within the sound discretion of the Com-
missioners Court.  You are therefore advised that a county,
as an adjunct to the operation of a vertical lift bridge over
a navigable deep water channel, such bridge being a part of

a county road, may purchase public liability insurance to cover damages or injuries resulting from the tortious acts committed in the operation thereof.

### SUMMARY

A County in the operation of a drawbridge over a navigable deep water channel may be liable for its torts under Admiralty Law, where an Admiralty Court has jurisdiction and, therefore, a County, as an adjunct to the operation of a vertical lift bridge over a navigable deep water channel, such bridge being a part of a county road, may purchase public liability insurance to cover damages or injuries resulting from tortious acts committed in the operation thereof.

Yours very truly,

WILL WILSON
Attorney General of Texas

By

Iola B. Wilcox
Assistant Attorney General

IBW:ms

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

Jack N. Price
Gordon C. Cass
Riley Eugene Fletcher

REVIEWED FOR THE ATTORNEY GENERAL
BY: Leonard Passmore